Good morning, Your Honor. May it please the Court. I'm Craig Crispin on behalf of Plaintiff and Appellant Jessica Marquez. This case raises three basic issues. Fees on post-acceptance work after the offer of judgment, where the defendants brought multiple motions, six months' worth of motions practice, and the effect of duero on that issue. Second is the hourly rate adopted by the magistrate and the use of the Oregon State Bar Survey. And third, the magistrate's effort generally by adopting various component arguments to reduce the award significantly, including the double use of some of the lodestar factors. Before we get to the original fee petition on the post-judgment or the post-settlement acceptance of the offer of judgment, isn't the offer of judgment explicit? Where's the ambiguity in the limiting of fee, award, and cost? Well, it becomes ambiguous when – well, two answers to that. Number one, and I have to tell you, the duero probably addresses this, but number one, it becomes ambiguous when the offer anticipates a post-judgment proceeding by leaving it to the district court to determine the reasonable amount of awards. But guerrero is definitive on that. That pretty much addresses that. Okay. So had there been no fight about whether or not the offer, the judgment should have been entered, you would – guerrero would bar you from making any claim for post-judgment work with respect to the amount of fees that you get. I would – we've raised the ambiguousness, but I would tend to agree if I were to decide. And I think it does here, too. So let's focus for a second only on the fees that you incurred combating the Rule 60 and 59 motions. Right. Which is the major part of it, of the attorney fees. I want to be sure I understand. So are you conceding the post-judgment fee issue because of guerrero? I believe that guerrero can be and should be limited to its facts, that guerrero's facts were very different from what happened here, and that there is room to, because of the passage of time, to say that guerrero is under different circumstances. But isn't it direct holding of guerrero? I mean, isn't – I mean, I understand that you don't want to give up any ground on this, but wouldn't we have to go in bank to overrule guerrero if we were going to accept your position with respect to fees? Yes. Okay. So assuming – so limit your argument for the moment to the fees that you incurred in combating their attempts to wiggle out of the judgment. Sure, sure. Let's just make sure we all understand procedurally where things happen. This will just take 30 seconds. The offer of judgment was accepted and filed. Under Rule 68a, that meant that judgment should have entered immediately without anything else. Now, the defense filed a motion to stay, and that delayed entry of judgment for some time and required us to litigate that motion to stay. Then judgment was entered, and then there was the motion for relief of judgment, which was very significant, and then an additional attorney fee, supplemental attorney fee motion on the motions practiced after the acceptance. Okay. So what is the basis for award of fees with respect to that work? The Section 1988 attorney fees under the kind of claims that we wrote, that were raised. Right. It's not the offer of judgment. It's not the offer of judgment? Right. It's not the offer of judgment. The offer of judgment entitles you to fees only incurred through the date of the offer. Through the date of the offer, right. Right. So your position is that Section 1988 independently entitles you to fees incurred after the date of the offer? Under what circumstances? Well, a question that Guerrero did not answer was whether fees after an offer of judgment on appeal, for example, would be recoverable. And the defense's argument seems to be that once there's an offer of judgment that says no more fees, that the case could go all the way to Supreme Court and if they wanted to raise issues. That's not our case. It is this case in that it went to post-judgment. What in effect was an appeal in the district court is now here on appeal. Guerrero did not address that at all. So there's got to be some point where the defense or the party making the offer of judgment has to bear the burden that it created by multiplying the proceedings. Well, isn't that, though, more a matter of drafting? I mean, I used to do a lot of transactions law, and sometimes people make really bad deals. They draft a contract in a particular way, and after a while they have buyer's remorse. They wish they'd have thought of that and not any other. But can't we ascribe this particular one, the wording of the contract, if you want to call it that, was such that it barred further relief under Guerrero? In retrospect, you probably would have said, oh, you know, but if there are further proceedings, it doesn't bar us. Isn't this a contract issue almost? Well, any ambiguity must be construed against the offer. Well, if it's ambiguous. Is it ambiguous? It's draconian. It may not have been within the contemplation of your side when you took it up. And I suppose the judge had the power under various rules and statutes to award fees for a frivolous filing on their part. But just focus on the contract for a second. The contract said, we'll pay you a certain amount, plus all fees incurred through the date of this offer. How can I read that contract as ambiguous? You can read it to say that the contract is ambiguous. They may have behaved badly under the contract. But how is it ambiguous? Well, it can be read to say that we're offering this through the date of the offer, and then once there is a judgment entered, there's the end of that thing. But you knew it wasn't the end of it because there might be litigation over the amount of fees. And that was something we were able to anticipate. What we were not able to anticipate was the six months' worth of motions practice that they used to dilute. But doesn't that get back to my question about what you agreed to, what the contract, if you will, said? What we agreed to was that the work for the fee motion would not be compensated. So your position is I couldn't have contemplated they would behave badly? No way could we have contemplated that. I mean, and I understand that. They seem to have behaved badly. I mean, you have a lot of litigation in Oregon. Many of the cases cited involve you. So I think probably you have some anticipation that there might be some issues that come up. Frankly, Your Honor, I've never seen anything more than the fee motion, the response and the reply, seldom is there even oral argument on it. And in any case, not just my own. You're right, I've done a number of them. Forgive me. I need to get an answer from you about this. Didn't you agree, or whoever was handling this, agree to the language that was just quoted by Judge Hurwitz? That's the language you agreed to, right? And if this Court finds that language unambiguous, doesn't that language in Guerrero say at least this part of the case is over? That says that through the fee motion, on the underlying case, that we don't get compensated. Okay. So there are other things you're talking about. And I get those. Some of those are quite a different matter and don't have anything to do with Guerrero or the contract per se. But on that portion of it, if it's not ambiguous, it's done, right? And I want to make clear, I think I agreed on that earlier when it was brought up, that we don't get for our original fee motion. But what is not addressed in that, if you're going to call it a contract, the Rule 68 offer and the acceptance, we had no ability to negotiate, was all the other work that they did. And there's other grounds. If you don't want to go with the... So is this a Hadley versus Baxendale thing, whether it's reasonably foreseeable? Is that what we're talking about here? I think that if we're talking about a one-line contract, that they cannot act, the offerer cannot act... Well, you didn't have to accept it. We didn't have to accept it. I mean, so there is... My difficulty is on this one, the contract does seem unambiguous. I would understand if you were here trying to get out of it and say there wasn't a meeting of the minds because when they fought, you know, that's what they argued and you beat that one in the trial court. But I don't understand how you, if the contract stands and it's unambiguous, how you can get past the language of it. There's a new case. In essence, there's a new case that they started, they initiated. And, you know, there's equitable grounds. There's the question of bad faith and the grounds for attorney fees on bad faith. There's... On that one, don't we have to find that the trial court abused its discretion in not awarding you those fees? Well, she didn't. The magistrate did not address it, did not make a decision on our request for equitable grounds, attorney fees. So what do we do? Do we assume that he overlooked it or that he just decided it contrary to your position? It wasn't addressed. There was no comment. So I don't know how we assume one way or the other. That's what it was. Do you want to save your 12 seconds? 12 seconds, Your Honor. All right. All right. Counsel. Good morning. I'm Stephen Detheridge, and I'm here on behalf of the Respondent School District. And obviously, we agree the contract is unambiguous. It has plain language that cut off the fees as of the date. Well, but do you really think it was in the contemplation of the other side that after you entered into this binding and unambiguous contract, you would try to squirrel out of it? And, Your Honor, I think that you raised a good point, which is if we were talking about maybe rescinding the contract, going back to the trial court and proceeding on the merits of the claims, that would be one thing. But we're not really talking about a contract rescission circumstance here. The question is, the language is unambiguous. And under Guerrero, it cut off the fees as of the date of the offer. Now, there are circumstances, and one of them is bad faith. And this morning, I was looking at the briefing, and there's colorful language in one of this Court's opinions, which says the conduct must be, quote, substantially motivated by vindictiveness, obduracy, or malafides. And I was wondering what the court will do. The court below found no bad faith. And that's the point. The court below specifically found that there was no bad faith. And I can give the reference to that findings, and it's up in the legislature's records. Let me ask you about a different issue. We've focused on this other with your colleague. But didn't the court improperly double count on reducing the hourly rate, in effect, twice? No, Your Honor. Actually, double. So, the below stars, the court calculated the hourly rate. And at the starting point, courts in this district used the OSB survey. And the reason why that's not what it's pointing to is that I've surveyed it. Okay. In addition to both her determination as to the appropriate hourly rate and the amount of hours expended, she, the magistrate judge, referenced repeatedly the lack of complexity. Yeah. No. And she had a very long opinion. She said a lot of stuff. And there's 21 pages where she discussed the reasons for the hourly rate and the amount of hours. But they were the same reason, though, weren't they? And part of what she said was that it was not a complicated case. Isn't that double counting under Moreno? Well, that's one way to do it, but that's not the only way, right? What I'm troubled with, it seems like the district court said this is a really simple case here. So I'm going to dock the hourly rate because it's simple. It didn't leave it at that. It went to the second point, we're going to cut the hours expended because it's a simple case. That's the same reason. I mean, we understand the district court has some discretion to reduce based upon that factor. But the question is, can she do it twice for the same reason? But what the case law tells us is we start off with what the lawyer usually charges, and then we adjust it. And she adjusted it down in this case, not because of any absence of skill of the lawyer, but because she thought it was a simple case, right? Right, right. But she took that rate and reduced it because she thought this was a simple case. I'm not going to give you what other judges may have given you for prevailing rates because in this case, the prevailing rate for this kind of case is less. It's a simple case. Well, there are some higher, and I understand there's a couple lower. But I think the magistrate judge was quite explicit in saying, I don't know what I would award you, the plaintiff's lawyer, in other cases, but this one is so simple that I think the lodestar rate ought to be some number below where it might be otherwise. Fair summary? Okay. And I'm not questioning that for the moment. But then she says, now I'm looking at the number of hours you spent on this simple case, and there should have been less in some areas, fewer hours in some areas, right? She did, specifically in the drafting of the complaint and the summary judgment. Fifty percent in drafting the complaint and 30 percent in the research and spent on the summary judgment. Beyond the lack of complexity in that one phrase, you mentioned the 35-page opinion of this issue, what explanation did she give to the 50 percent reduction in performing research for preparation of the complaint and the 30 percent reduction in the summary judgment? And, Your Honor, again, the response was also a clear difference in fact, and things were said during the hearing that I think will ensure the submission of the contact documents. She said, including Well, what's on the record that she would argue supports those? Right. In fact, it's that excerpt from record, page 52, that's sort of a given day hearing the question of whether the court should exclude or reduce the whole thing by 25 percent based on claims that have been lost in summary judgment. But she didn't make that finding, did she? She didn't make that finding. That's the difficulty I'm having. What she said was, I'm reducing these, the ones she reduced by some percentage, because this wasn't that complex. And that's the same factor she used to set the lodestar rate. If she said something different, like, I looked at this and there's just too much time spent on it, or there was churning, or there was, I'm reducing it because you weren't successful in all your claims, that would, I think, be fine with me. But I'm having difficulty, I think, as Judge Smith first expressed, if the same factor is being used twice, lack of complexity in setting the lodestar and lack of complexity in reducing some of the hourly expenditures. Don't we have double counting? Well, I think you have to look again at the entire community and look at what was said to her during the law argument and the factors that she took into consideration, including other awards to the same person by other judges. This would be a reasonable award. I'm not arguing, I don't think any of us are questioning whether or not where the judge arrived might not be reasonable. We're trying to figure out whether or not in arriving there she may have used the same factor twice. And I, you know, I think mine is a bit more on that. But based on the evidence of the report, I would like to point out again on that, because I'm going to excerpt the record page 52, Mr. Gristin said, well, if I probably put 10 minutes in the court law on the reallocation of the claim into the IID claim, and in excess of caution, I'd say maybe a half an hour would do that. So he's talking about cutting the case from 12 to 22 for this one. And that's one of the factors, that's one of the huge factors that the judge took into consideration when deferring. You know, I think it wasn't a particularly complex case. I think if I can reduce the hours spent on drafting the claim. But that's the block billing issue. I guess what I struggle with here, I mean, certainly the judge had discretion to reduce the billing. That's part of the deal. But it seems like there's a repeated reduction for much the same thing. And then you get to whether that's an abuse of discretion and what does the case law say, like in Moreno and so on. Don't we have a problem here? I mean, I know you don't like that aspect of it, but the reality is the judge can't just keep saying the same thing about the same problem and cutting here a different reason and so on, but ultimately revisiting the same well all the time. The best I can say is that the judge, in setting up the rate, set a very consistent line for the judges to set. It was discrete. And then when she got to the specific category, she went through. I went through the block billing and it was great. She didn't talk about, there was no discussion there about whether it was simple or complex. She didn't talk either about the delay between the acceptance of the judgment and the final entry of the judgment on the fee award or the impact of that delay or any inflation with it. Had there been a petitioner raised or an accountant raised that? How do you respond to that? Should she have given some explanation? You're telling me there was basically no delay between October 7th, 2011, and when the judge took the case. Well, but... October 7th, 2012, and the deferment fee award was paid later that same year. There was a substantial delay between the time that the work was incurred, at least some of the work in the case was incurred in payment, and the district judge, the magistrate judge in this case, didn't say anything about the inflation factor, one way or the other. That's true. Isn't she required to address that? One way or the other, either say, I use my discretion not to award to take account of inflation, or I do take account of inflation and here's how. The judgment's silent on that, and we can't tell whether or not she exercised her discretion or simply overlooked this issue. I read the opinion yesterday, and I can't think of anything to say. I thought that she did address the inflation issue, because it was raised, and it was said that she incurred an inflation, and that's the first question that popped up. But again, there wasn't a testament from the average rate of inflation in the community, which was about 275 to 325. So that's just a normal time frame. I'm going to ask my colleagues here if they have any more questions. If not, we thank you very much for your presentation. The case just argued is submitted, and we thank you both.
judges: Pro, Smith, Hurwitz